IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-481-BO

L.P., by and through her guardians, J.P. and )
K.P., and J.P. and K.P. individually, )
        Plaintiffs, )
)
v. )      ORDER
)
WAKE COUNTY BOARD OF )
EDUCATION, in its official capacity, ET )
AL., )
        Defendants. )

This cause comes before the Court on the parties' motions for leave to file excess pages, defendants' motions to dismiss, and plaintiffs' motion to strike reply to response to motion. For the reasons that follow, the motions to file excess pages [DE 30, 36] are GRANTED. Plaintiffs' motion to strike [DE 44] is GRANTED IN PART and DENIED IN PART. Defendants' motions to dismiss [DE 31, 42] are DENIED IN PART and the remainder is STAYED and held in ABEYANCE.

## BACKGROUND

On September 11, 2020, plaintiffs K.P and J.P. filed suit on behalf of their daughter, L.P., against Wake County Board of Education, various administrators, and teachers at Scotts Ridge Elementary School. Plaintiffs allege discrimination in violation of Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, *et seq.* (Count I) and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, (Count II); violation of L.P.'s Fourteenth and Fourth Amendment rights (Counts III-VII[1]), pursuant to 42 U.S.C. § 1983; and state law

---

[1] Plaintiffs' first amended complaint erroneously refers to the sixth count as "Count V" (the fifth count is also called "Count V") and to the seventh count as "Count VI." The Court will assume this is a clerical error and will henceforth refer to the sixth count "Count VI" and the seventh as "Count VII."

1

claims of negligence, negligent infliction of emotional distress, and false imprisonment (Counts VIII-X). Both parties filed motions for leave to file excess pages. All defendants, except defendants Liggett and Lopes, filed a motion to dismiss [DE 31] in April 2021. Liggett and Lopes filed their own motion to dismiss [DE 42] in June 2021, in which they renewed and incorporated the arguments set forth in the previous motion to dismiss. Plaintiffs filed a motion to strike improper arguments from defendants' filings and, in the alternative, requested permission to address the arguments in a sur-reply.

L.P. was a student at Scotts Ridge public elementary school from 2017-2020 for her third, fourth, and fifth grade years. L.P. has learning disabilities, anxiety, and communication disabilities. Plaintiffs allege in their first amended complaint that between 2017-2020, L.P. was physically restrained by school administrators and secluded in a closet, whose door was held shut and whose light only functioned sometimes. Plaintiffs allege that the seclusion and restraint started when L.P. was a seven-year-old third grader. Plaintiffs allege that L.P. was discriminatorily subjected to punishment in the form of restraint and seclusion for actions, such as flipping markers, asking questions, and tipping her chair, for which her non-disabled peers were not punished. Plaintiffs allege that the restraint and seclusion caused extreme stress and anxiety in L.P. Her mental health deteriorated, she became suicidal, and she became fearful of school.

Plaintiffs allege in one instance, L.P. was so distressed at being shut in the closet that she ripped her hair out, ripped some of her scalp off, pinched her toes in the door, and peeled the plastic wall coverings off the walls. Throughout 2017-2018, L.P.'s parents asked the school to use positive interventions with L.P. and expressed concern over her increasing fear. Plaintiffs allege that, at that time, they did not know that L.P. was being restrained and secluded. Plaintiffs allege that school administrators deliberately hid the fact that they were restraining and secluding L.P. from her parents by failing to notify them, telling them that L.P. was having a rough day instead of

2

explaining that L.P. was upset from being secluded, or telling them that L.P. was simply in a time-out. On December 3, 2019, L.P. had a panic attack when she saw another disabled student being taken into the seclusion room. As a result of the panic attack, L.P. had to leave school and was unable to attend from December 3-5.

Plaintiffs allege that during her time at Scotts Ridge, L.P. was secluded for significant amounts of time. The teachers did not always record when they used restraint and seclusion, although they were required to do so. From 2019-2020, twelve instances of seclusion were documented, which resulted in 15.67 hours of lost instructional time for L.P.[2] K.P. and J.P. did not find out what was happening to their daughter until February 21, 2019, when K.P. was sent a video from a concerned parent showing L.P. being dragged from the cafeteria for wanting to eat lunch with her non-disabled peers. Plaintiffs confronted the school about how this treatment was inappropriate and caused L.P. serious harm. Plaintiffs allege that the school then falsely stated that it would limit the use of restraint and seclusion on L.P. Plaintiffs allege that L.P. continued to be restrained and secluded.

On November 21, 2019, K.P. emailed state representative Sydney Batch about defendants' use of seclusion and restraint. Rep. Batch's office forward the message to Lindsay Mahaffey, a member of the Wake County Public School System ("WCPSS") Board of Education ("Board"). On November 22, 2019, Mahaffey forwarded the message to WCPSS Superintendent Moore, WCPSS Assistant Superintendent for Special Education Services Hamilton, and other WCPSS administrators asking them to investigate the use of restraint and seclusion at the school. Hamilton forwarded the message to WCPSS Director for Social and Behavioral Programing Lopes and WCPSS Senior Administrator for Special Education Services Liggett, directing them to contact

---

[2] This was discovered as a result of plaintiffs' IDEA administrative discovery procedure in 2020.

3

Scotts Ridge Principal Leach so that administrators could dig deeper into the allegations. Plaintiffs allege no further action or investigation took place.

## DISCUSSION

### I. Motion for Leave to File Excess Pages

Both parties filed motions, pursuant to Local Rule 7.2, requesting leave to exceed the page and word limitations in their filings. This case involves a lengthy first amended complaint that alleges causes of actions under the Constitution, federal statutes, and state law. It is 78 pages long and has 261 paragraphs. Plaintiffs and defendants filed extensive filings to fully respond in order to these allegations. For good cause shown, the Court GRANTS the parties' motions for leave to file excess pages [DE 30 & 36]. This Court will consider the full memoranda submitted by the parties.

### II. Motion to Strike

Plaintiffs filed a motion to strike defendants' reply [DE 41] to plaintiffs' response and defendants' attachments [DE 41-1]. Plaintiffs argue that defendants assert new grounds for dismissal not included in defendants' motion to dismiss [DE 31], and that defendants improperly reference plaintiffs' original complaint. Plaintiffs also seek permission to file a sur-reply.

A court may strike from a pleading any immaterial matter pursuant to Federal Rule of Civil Procedure Rule 12(f). An amended complaint supersedes the original complaint, rendering the original complaint of no effect. *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001); *see Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017). Defendants' references to an inoperative, superseded complaint are improper and immaterial. As such, they should be struck.

Courts may "strike arguments made for the first time in a reply brief." *Penguin Restoration, Inc. v. Nationwide Mut. Ins., Co.*, No. 5:13-CV-63-BO, 2014 WL 715123, at *2 (E.D.N.C. Feb. 21, 2014); *see Buser v. So. Food Serv., Inc.*, 73 F.Supp.2d 556, 568 n.12 (M.D.N.C.1999).

4

Plaintiffs correctly assert that the defendants' argument that *exceptions to exhaustion do not apply to plaintiffs' case* is a new argument. Plaintiffs assert in the first amended complaint that exceptions to the administrative exhaustion requirement apply to their case. Defendants' motion to dismiss only asserts that the exhaustion requirement applies does not address whether, even if the exhaustion requirement applies, whether plaintiffs' case qualifies for an exception. The first time that defendants address whether exceptions to exhaustion apply is in defendants' reply [DE 41]. The Court finds this an improperly raised new argument. As such, it should be struck.

The Court finds that DE 41-1 is not new evidence. DE 41-1 contains documents that were referenced and explained in defendants' motion to dismiss [DE 31]. Thus, this filing is only a further elaboration of an argument previously raised. Sur-replies may be allowed when new submissions or arguments are included in a reply brief in such a way that impairs the non-movant's ability to respond. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir.2003); *Norton v. Rosier*, No. 7:14-CV-00260-FL, 2017 WL 4399194, at *4 (E.D.N.C. Sept. 29, 2017) ("Courts generally allow a party to file a sur-reply 'only when fairness dictates based on new arguments raised in the previous reply.'") (citation omitted). The Court does not find that fairness requires a sur-reply.

Plaintiffs' motion to strike [DE 44] is GRANTED as to references to the original complaint and as to new arguments relating to exceptions to exhaustion in DE 41. The Court will not consider those portions of defendants' reply. Plaintiffs' motion [DE 44] is DENIED as to striking DE 41-1 and as to permission to file a sur-reply.

### III. Motions to Dismiss

Defendants filed motions to dismiss [DE 31, 42] alleging several jurisdictional claims, an affirmative defense, and argue that plaintiffs have failed to state claims upon which relief can be granted.

*1. Service of process*

On April 13, 2021, defendants moved to dismiss claims against Liggett and Lopes pursuant to Federal Rule of Civil Procedure Rule 12(b)(5) for insufficient service of process. Service was executed as to Lopes on April 29, 2021 [DE 37] and as to Liggett on May 13, 2021 [DE 40]. The Court finds that service as to Lopes and Liggett is proper. Lopes and Liggett concede as much in their separate motion to dismiss [DE 42]. Accordingly, defendants' motion to dismiss [DE 31] is DENIED AS MOOT regarding service to Lopes and Liggett.

2. *Statute of Limitations for Section 504 and ADA Claims*

Defendants move to dismiss plaintiffs' first amended complaint, arguing that plaintiffs' Section 504 and ADA claims based on conduct prior to September 11, 2018 are time-barred. Plaintiffs argue that the claims are not time-barred because plaintiffs were not aware of the harms until at least 2019.

In North Carolina, Section 504 and ADA claims have a two-year statute of limitations for non-employment claims of discrimination. *See McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 130 (4th Cir. 1994); *Dickinson v. Univ. of N. Carolina*, 91 F. Supp. 3d 755, 763 (M.D.N.C. 2015) (finding that ADA and Section 504 claims in this context are subject to North Carolina's two-year statute of limitations); *see generally* N.C. Gen.Stat. § 168A–12. While the state rules determine the statute of limitations, federal law determines the time of accrual of a right of action. *Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977). The statute of limitation begins to accrue "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* at 263. Plaintiffs must act with due diligence in discovering the facts and injury that underly their cause of action. *See Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir.), *cert. denied*, 464 U.S. 916 (1983).

Plaintiffs allege that, despite acting with due diligence, they did not discover that L.P. was being restrained and secluded until at least February 21, 2019, when a fellow parent sent K.P. a

video of L.P. being dragged out of the school cafeteria. Prior to February 2019, plaintiffs were told by the school that the school would notify parents if restraint or seclusion were used on their child. The school failed to notify plaintiffs and allegedly intentionally mislead plaintiffs when plaintiffs confronted the school about L.P.'s increasing fear of Scotts Ridge. The Court finds that the plaintiffs were acting with due diligence to discover injuries inflicted by defendants on their daughter, L.P. Accordingly, February 21, 2019 was the earliest time that the parents had notice of the basis of their ADA and Section 504 claims. The statute of limitations did not begin to accrue until that date. *See J.W. v. Johnston Cnty. Bd. of Educ.*, No. 5:11-CV-707-D, 2012 WL 4425439, at *6 (E.D.N.C. Sept. 24, 2012). Plaintiffs filed their original complaint on September 11, 2020, well within two years of the earliest possible time they could have learned about injuries to their daughter. Therefore, none of plaintiffs' claims are barred by the two-year statute of limitations. Defendants' motion to dismiss [DE 31, 42] is DENIED as to defendants' statute of limitations arguments.

*3. Immunity*

Individual defendants assert that they are entitled to qualified immunity from plaintiffs' § 1983 claims (Counts IV-VII) and to public official immunity from plaintiffs' negligence and negligent infliction of emotional distress claims (Counts VIII-IX). Plaintiffs argue that defendants are not entitled to immunity because defendants' actions violated L.P.'s clearly established rights and were corrupt, malicious, and outside of the scope of defendants' duties.

Qualified immunity is an affirmative defense that "shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir.2006)). The defense of immunity is evaluated under Federal Rule of Civil Procedure 12(b)(6). *See Occupy Columbia*, 738 F.3d at 115. A motion to

7

dismiss pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir.2011). However, dismissal is appropriate "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). For the purpose of evaluating the affirmative defense brought at this stage of the pleadings, the Court will accept as true the facts alleged in the first amended complaint, but has no obligation to accept as true legal conclusions or mere conclusory statements. *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021).

Public school officials are entitled to the defense of qualified immunity for § 1983 claims unless the official (1) violates a federal statutory or constitutional right and (2) the right was clearly established and one that a reasonable person would have known. *See Ridpath*, 447 F.3d at 306; *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018); *H.H. ex rel. H.F. v. Moffett*, 335 F. App'x 306, 313 (4th Cir. 2009). Qualified immunity does not protect government officials when they are "plainly incompetent or ... knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "But, in gray areas, where the law is unsettled or murky, qualified immunity affords protection to [a government official] who takes an action that is not clearly forbidden—even if the action is later deemed wrongful." *Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir.2001).

Liberty from bodily restraint is at the core of what the Due Process Clause of the Fourteenth Amendment protects. *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982). When restraint is used in a school setting, the court must balance a student's liberty interest against the state's interest in using restraint. *Moffett*, 335 F. App'x at 313. The Fourth Circuit Court of Appeals in *Moffett* found that a public school official was not entitled to qualified immunity when the official violated a disabled

8

student's clearly established constitutional right to liberty from bodily restraint by strapping her to her wheelchair for extended periods of time. *Id.* at 313-15. While there were appropriate times when the student needed to be strapped to her wheelchair, such as to keep her from falling out while she was moving, the Fourth Circuit found a civil rights violation because it was clear that she was being restrained "for long periods of time .... with malice ... [and] with callous and deliberate indifference toward" her rights and not for educational or safety purposes. *Id.* at 313.

First, L.P.'s constitutional right to bodily integrity and liberty from bodily restraint is clearly established and one that a reasonable school administrator would have known. Just as there were circumstances when it was appropriate to restrain the plaintiff student in *Moffett*, there may be appropriate times to separate disabled children who are a danger to themselves or others from other students or even to restrain them at times in a school setting. However, plaintiffs' allegations make it clear that defendants were systematically restraining and secluding L.P. as punishment for behaviors for which non-disabled students were not equally punished. L.P. clearly had a right not to be arbitrarily restrained and secluded for extended periods of time in a public school setting. A reasonable teacher or public school official would have known that students have the right not to be arbitrarily secluded and restrained for long periods of time. Plaintiffs' factually allegations that she was, in fact, subject to extended restraint and seclusion satisfy the second prong.

Plaintiffs allege that WCPSS administrators were notified about this abuse, that the email chain was a paltry effort to supervise, and that no investigation into the abuses at Scotts Ridge ever took place. Defendants allegedly hid this abuse from plaintiffs and failed to report it to the state. The Court finds that defendants were acting with deliberate indifference towards the rights of L.P. when they unnecessarily restrained and secluded her for long periods of time. This indifference extended to the school's efforts to hide the restraint and seclusion from L.P.'s parents. A reasonable public school official would have known that the seclusion that L.P. was allegedly subjected to

over a period of several years was a violation of that right. Accordingly, defendants' motions to dismiss [DE 31, 42] pursuant to the defense of qualified immunity are DENIED.

North Carolina public school officials engaged in the performance of discretionary government duties are entitled to public official immunity unless they act with corruption, maliciousness, or outside of the scope of their duties. *See Smith v. Hefner*, 68 S.E.2d 783, 787 (N.C. 1952); *Petersen v. Midgett*, 140 F. Supp. 3d 490, 504 (E.D.N.C. 2015) (finding public official immunity under North Carolina law on negligence claims). "An officer acts with malice when he does that which a man of reasonable intelligence would know to be contrary to his duty, i.e., when he violates a clearly established right." *Cooper v. Sheehan*, 735 F.3d 153, 160 (4th Cir. 2013) (quotation omitted) (citation omitted). The Fourth Circuit in *Moffett* found that the factual background supported reasonable inferences that the teacher was motivated by malice – in that there are little or no justifications for arbitrarily strapping a disabled child to her wheelchair for long periods of time other than malice. *See Moffett*, 335 F. App'x at 313.

Plaintiffs sufficiently allege that defendants restrained and secluded L.P. because she was disabled and showed deliberate indifference and cruelty to the suffering this treatment caused her. L.P. was secluded for long periods of time, many days for at least an hour and one day for at least three hours. In one instance, when L.P. was about seven years old, L.P. became so distressed alone in the seclusion closet that she harmed herself. Defendants persisted in secluding L.P. periodically for at least another year, even when L.P.'s parents and doctors informed the school about the special education program's negative impact on L.P.'s mental health and her suicidal thoughts. The Court finds that the alleged facts support a reasonable inference that the officials were motivated by malice in subjecting L.P. to this treatment. The malicious conduct extends to the officials intentionally hiding the source of L.P.'s stress, i.e., the seclusion and restraint, from L.P.'s

parents, and to failing to investigate and stop the abuse. Accordingly, defendants' motions to dismiss [DE 31, 42] pursuant to the defense of public official immunity are DENIED.

The Court rejects defendants' assertions of qualified and public official immunity at this stage in the proceedings.

### 4. Administrative Exhaustion

Defendants argue that plaintiffs' federal claims (Counts I-VII) should be dismissed for lack of jurisdiction, pursuant to 12(b)(1), because plaintiffs are required to administratively exhaust claims that request relief available under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Plaintiffs initiated the administrative process in North Carolina's Office of Administrative Hearings ("OAH") on February 20, 2020. On July 30, 2021, OAH issued a decision in favor of the plaintiffs. Defendant Board appealed and the matter was still pending as of November 5, 2021. [DE 54]. Plaintiffs argue that their federal claims assert harms other than those addressed by IDEA, and thus plaintiffs are not required to complete the IDEA administrative process prior to filing in federal court. Plaintiffs assert, in the alternative, that they qualify for exceptions to the administrative exhaustion requirement for IDEA claims and that exhaustion is not a jurisdictional pre-requisite. Plaintiffs in this case were faced with a situation where their non-FAPE federal claims would have been barred by the two-year statute of limitations if they had had they waited until the administrative process was complete.

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. Plaintiffs have the burden of proving jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). In determining jurisdiction, the courts regard the pleadings as "mere evidence." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). As a threshold matter, the Court will discuss whether plaintiffs' claims are truly IDEA claims that need to be exhausted or if the claims assert separate federal harms.

11

A claim brought under Section 504, the ADA, or § 1983 must exhaust the IDEA's administrative procedures[3] before filing in federal court if the suit seeks relief that is also available under the IDEA. 20 U.S.C. § 1415(*l*); *see Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755–56 (2017); *A.H. by & through H.C. v. Craven Cty. Bd. of Educ.*, No. 4:16-CV-282-BO, 2017 WL 3493612, at *7 (E.D.N.C. Aug. 14, 2017). If the gravamen of a claim is a denial of "free appropriate public education" ("FAPE"), then the claim asserts harms addressed by IDEA. *Fry*, 137 S. Ct. at 748 (finding exhaustion not necessary when the gravamen of a claim is something other than a denial of IDEA's core guarantee – a free appropriate public education) (quoting 20 U.S.C. § 1412(a)(1)(A)). Failure to exhaust a FAPE-based claim deprives federal courts of subject matter jurisdiction over that claim. *M.M. ex rel. D.M. v. School Dist. of Greenville County*, 303 F.3d 523, 536 (4th Cir. 2002); *Craven*, 2017 WL 3493612, at *2. A FAPE comprises "special education and related services" and includes both "instruction" tailored to meet a child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction. 20 U.S.C. §§ 1401(9), (26), (29); *see Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 203 (1982).

The Supreme Court in *Fry v. Napoleon Community Schools* instructs courts to engage in a two-part inquiry to determine whether the gravamen of a complaint is a denial of FAPE or if it addresses some other form of disability-based discrimination: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school" and second, could an adult at the school, such as an employee or visitor, "have pressed essentially the same grievance?" *Fry*, 137 S. Ct. at 756. When the answer to both questions is yes, the complaint is likely not alleging a denial of FAPE and administrative exhaustion is not

---

[3] In North Carolina, IDEA claims must be administratively exhausted with a petition in the Office of Administrative Hearings (OAH) prior to filing a suit in federal court. 20 U.S.C. § 1415(i)(2)(B).

12

required. *See id.* Courts can further ask whether the plaintiffs' claims are "viable only because they concern a child in a school setting." *Craven*, 2017 WL 3493612, at *5.

Claims that allege improperly tailored educational programing or services for disabled students in public schools raise FAPE-based harms and must be administratively exhausted. *Greenville County*, 303 F.3d at 526 (finding that an improperly tailored Individualized Education Program ("IEP") failed to provide FAPE). In 2017, the Supreme Court in *Fry* found that a disabled student's Section 504 and ADA claims of discrimination asserted non-FAPE harms when her school refused to allow her service dog to accompany her to class. *Fry*, 137 S. Ct. at 758. The school, as part of attempting to accommodate her disability and provide her with appropriate education, offered to provide her with a human aid in lieu of her service dog. *Id.* However, providing a human guide did not allow the student the freedom and dignity to navigate the school herself, like she could with her service dog, and was an incomplete substitute. *Id.* at 756-58. The Court emphasized that the student's claim did not pertain to the adequacy of her education, but instead to her meaningful opportunity to independently access her education. *Id.* at 756.

The caselaw applying *Fry* does not draw a bright line regarding which harms are FAPE-based and which are not. This Court found that a disabled student's Section 504, ADA, and § 1983 claims were FAPE-based when the student was separated from his non-disabled peers, restrained, and secluded in part to address his propensity for self-harm. *Craven*, 2017 WL 3493612, at *5. The plaintiff in *Craven* was a severely disabled elementary school student who was denied opportunities to participate in activities with his peers, like eating in the cafeteria, and whose teachers improperly used restraints to prevent the plaintiff from harming himself. The plaintiffs' Section 504 and ADA claims asserted that their child was subject "to a 'hostile education environment' and that he was denied equal access to educational services." *Id.* This Court found that these harms stemmed from the school's flawed attempts to address the student's disabilities

13

in accordance with his Individualized Education Plan ("IEP") and thus were FAPE-based. *Id.* at *7.

This district and the Middle District of North Carolina have found that Section 504, ADA, and § 1983 claims made by disabled students who were educated separately from their non-disabled peers and excluded from the non-disabled classroom raise FAPE-based harms. *Vlasaty v. Wake Cty. Pub. Sch. Sys. Bd. of Educ.*, No. 5:17-CV-578-D, 2018 WL 4515877, at *6 (E.D.N.C. Sept. 20, 2018) (finding that the factual allegations were all school-specific and concern the proper way to educate a uniquely disabled child*). V. v. Durham Pub. Sch. Bd. of Educ.*, No. 1:17CV691, 2018 WL 2725467, at *1 (M.D.N.C. June 6, 2018), *report and recommendation adopted*, No. 1:17-CV-691, 2018 WL 3370644 (M.D.N.C. July 10, 2018) (finding that the Section 504, ADA, and § 1983 claims required exhaustion because they were actually FAPE-based IDEA claims). The children in these cases were not denied access to education writ large, but instead they were provided an accommodated program of questionable appropriateness. *Id* at *15.

Plaintiffs allege in Count I that L.P. was denied access to her education and non-disabled peers because of her disability in violation of Section 504. The first amended complaint alleges that this resulted in loss of instructional time. *Fry*'s two-part inquiry leads to split results –denying a disabled student access to non-disabled peers as part of a segregated special education program is a school-specific harm that couldn't be raised by an adult in the same facility, as the courts found in *Vlasaty v. Wake Cty. Pub. Sch. Sys. Bd. of Educ.* and *V. v. Durham Pub. Sch. Bd. of Educ.* However, barring L.P. from accessing any classroom or any education by keeping her confined in a closet is more akin to the plaintiff in *Fry*, who was denied access to the educational building.

Plaintiffs' Equal Protection claim pursuant to § 1983 (Count III) alleges intentional discrimination and denial of equal access to education due to restraint and seclusion. On its face, this may seem like a non-FAPE injury similar to the one cause by denying a child access to her

14

education by refusing to allow her service dog in school. Physically denying a student access to education, whether they are denied a service device or kept in a closet, raises non-FAPE injuries. However, defendants argue that restraint and seclusion were legitimate methods of special education at the school, making this look more like a hostile educational environment that was found to be a FAPE-based injury in *Craven*. Scotts Ridge's attempts to use restraint and seclusion as methods of accommodated education potentially link this injury to FAPE.

Plaintiff's ADA claim (Count II) alleges routine exclusion of disabled students from public school services, discriminatory punishment of L.P., a hostile learning environment, and failure to provide L.P. with reasonable accommodations for her disability. As discussed above, the exclusion and discriminatory punishment weigh in favor of finding this a non-FAPE allegation. However, failure to provide a student with reasonable accommodation for disability fits squarely into the "appropriate education" require by IDEA and the concept of FAPE. Plaintiff's § 1983 Due Process claim (Count IV) rests on the allegation that plaintiffs were deprived of Section 504 and ADA rights without due process of law. Determining whether Count IV raises FAPE-based harms relies on the determinations of Counts I and II. Thus, Count IV cannot easily be classified either.

Counts I through IV cannot be clearly separated into FAPE and non-FAPE based claims. It is possible that one action by a school administrator may spawn both FAPE and non-FAPE-based harms. In order to ensure that no doubt lingers as to the administrative exhaustion requirement and because administrative proceedings are so far along, this action is STAYED and placed in ABEYANCE to allow administrative proceedings to conclude. *See Collins v. Franklin Cty.*, 861 F. Supp. 2d 670, 677 (E.D.N.C. 2012); *Westry v. N.C. A&T State Univ.*, No. Civ. 1:01CV1129, 2002 WL 1602451 *3 (M.D.N.C. June 10, 2002). Defendants' remaining arguments in their motions to dismiss [DE 31, 42], namely the 12(b)(1) argument for lack of supplemental

jurisdiction and the 12(b)(6) argument for failure to state a claim, shall be STAYED and held in ABEYANCE.

## CONCLUSION

Accordingly, the motions to file excess pages [DE 30, 36] are GRANTED. Plaintiffs' motion to strike [DE 44] is GRANTED IN PART as to references to the original complaint and new arguments about exceptions to exhaustion in DE 41, and DENIED IN PART as to the request to strike DE 41-1 and to file a sur-reply. Defendants' motions to dismiss [DE 31, 42] are DENIED IN PART regarding the arguments relating to insufficient service of process, time-barred claims, and immunity defenses. The remaining arguments in defendants' motions to dismiss are STAYED and held in ABEYANCE.

The Clerk is DIRECTED TO REMOVE this case from the active docket, pending a resolution of administrative proceedings before the State. Plaintiffs are DIRECTED to notify the Clerk of the conclusion of such proceedings, at which time the Clerk is DIRECTED TO RE-ENTER this case to the active docket.

SO ORDERED, this __14__ day of December, 2021.

                                             *Terrence Boyle*
                                             TERRENCE W. BOYLE
                                             UNITED STATES DISTRICT JUDGE