IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-481-BO

L.P., by and through her guardians, J.P. and )
K.P., and J.P. and K.P. individually, )
               Plaintiffs, )
                )
v. )               O R D E R
                )
WAKE COUNTY BOARD OF )
EDUCATION, in its official capacity, ET )
AL., )
               Defendants. )

This cause comes before the Court on defendants' motions to dismiss [DE 31, 42]. The motions were partially denied by this Court's December 15, 2021 order [DE 55] and have been placed back on the active docket as of July 6, 2022. The motions are now ripe for adjudication. For the reasons that follow, the motions to dismiss for failure to administratively exhaust are denied in part as moot. The motions are denied in part as to requests to dismiss claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). The motions are granted in part as to the request to dismiss punitive damages against the Board for state law claims. The motions are denied in part without prejudice as to the request to dismiss punitive damages against the Board for the remaining claims.

## BACKGROUND

On September 11, 2020, plaintiffs K.P and J.P. filed suit on behalf of their daughter, L.P., against Wake County Board of Education, various administrators, and teachers at Scotts Ridge Elementary School. Plaintiffs allege discrimination in violation of Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, et seq. (Count I) and the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., (Count II); violation of L.P.'s Fourteenth and Fourth Amendment rights (Counts III-VII[1]), pursuant to 42 U.S.C. § 1983; and state law claims of negligence, negligent infliction of emotional distress, and false imprisonment (Counts VIII-X).

*Underlying Facts*

L.P. was a student at Scotts Ridge public elementary school from 2017-2020 for her third, fourth, and fifth grade years. L.P. has learning disabilities, anxiety, and communication disabilities. Plaintiffs allege in their first amended complaint that between 2017-2020, L.P. was physically restrained by school administrators and secluded in a closet, whose door was held shut and whose light only functioned sometimes. Plaintiffs allege that the seclusion and restraint started when L.P. was a seven-year-old third grader. Plaintiffs allege that L.P. was discriminatorily subjected to punishment in the form of restraint and seclusion for actions, such as flipping markers, asking questions, and tipping her chair, for which her non-disabled peers were not punished. Plaintiffs allege that the restraint and seclusion caused extreme stress and anxiety in L.P. Her mental health deteriorated, she became suicidal, and she became fearful of school.

Plaintiffs allege in one instance, L.P. was so distressed at being shut in the closet that she ripped her hair out, ripped some of her scalp off, pinched her toes in the door, and peeled the plastic wall coverings off the walls. Throughout 2017-2018, L.P.'s parents asked the school to use positive interventions with L.P. and expressed concern over her increasing fear. Plaintiffs allege that, at that time, they did not know that L.P. was being restrained and secluded. Plaintiffs allege that school administrators deliberately hid the fact that they were restraining and secluding L.P. from her parents by failing to notify them, telling them that L.P. was having a rough day instead of

---

[1] Plaintiffs' first amended complaint erroneously refers to the sixth count as "Count V" (the fifth count is also called "Count V") and to the seventh count as "Count VI." The Court will assume this is a clerical error and will henceforth refer to the sixth count "Count VI" and the seventh as "Count VII.

2

explaining that L.P. was upset from being secluded, or telling them that L.P. was simply in a time-out. On December 3, 2019, L.P. had a panic attack when she saw another disabled student being taken into the seclusion room. As a result of the panic attack, L.P. had to leave school and was unable to attend from December 3-5.

Plaintiffs allege that during her time at Scotts Ridge, L.P. was secluded for significant amounts of time. The teachers did not always record when they used restraint and seclusion, although they were required to do so. From 2019-2020, twelve instances of seclusion were documented, which resulted in 15.67 hours of lost instructional time for L.P.[2] K.P. and J.P. did not find out what was happening to their daughter until February 21, 2019, when K.P. was sent a video from a concerned parent showing L.P. being dragged from the cafeteria for wanting to eat lunch with her non-disabled peers. Plaintiffs confronted the school about how this treatment was inappropriate and caused L.P. serious harm. Plaintiffs allege that the school then falsely stated that it would limit the use of restraint and seclusion on L.P. Plaintiffs allege that L.P. continued to be restrained and secluded.

On November 21, 2019, K.P. emailed state representative Sydney Batch about defendants' use of seclusion and restraint. Rep. Batch's office forwarded the message to Lindsay Mahaffey, a member of the Wake County Public School System ("WCPSS") Board of Education ("Board"). On November 22, 2019, Mahaffey forwarded the message to WCPSS Superintendent Moore, WCPSS Assistant Superintendent for Special Education Services Hamilton, and other WCPSS administrators, asking them to investigate the use of restraint and seclusion at the school. Hamilton forwarded the message to WCPSS Director for Social and Behavioral Programing Lopes and WCPSS Senior Administrator for Special Education Services Liggett, directing them to contact

---

[2] This was discovered as a result of plaintiffs' IDEA administrative discovery procedure in 2020.

Scotts Ridge Principal Leach so that administrators could dig deeper into the allegations. Plaintiffs allege no further action or investigation took place.

*Procedural History*

On February 20, 2020, plaintiffs filed a petition for a contested case hearing in the North Carolina Office of Administrative Hearings ("OAH") alleging violations of the Individuals with Disabilities Education Act ("IDEA") against defendant Wake County Board of Education. On July 30, 2021, OAH issued a final decision in favor of plaintiffs. Defendant Board appealed OAH's Final Decision to the State Hearing Review Officer ("SHRO") on August 18, 2021.

In order to preserve claims, plaintiffs filed an initial complaint in this Court on September 11, 2020. Plaintiffs filed the amended complaint on or about March 30, 2021. Defendants Karen Hamilton, Sharon Harrison, Mary Ellen Leach, Barbara Liggett, Cam Lopes, Cathy Moore, Jeffrey Straight, and Wake County Board of Education filed a motion to dismiss [DE 31] plaintiffs' amended complaint on April 14, 2021. On June 3, 2021, defendants Cam Lopes and Barbara Liggett filed a renewed motion to dismiss [DE 42]. On June 9, 2021, plaintiffs filed a motion to strike [DE 44] defendants' reply in support of their motion to dismiss. At the time, the administrative matter before the OAH and SHRO continued to proceed.

On October 5, 2021, the Court ordered plaintiffs to file a status report regarding the state administrative review within thirty (30) days. Plaintiffs filed a status report with the Court on November 5, 2021, stating that parties had not received a final decision from the SHRO. On December 15, 2021, the Court denied defendants' motions to dismiss regarding the arguments relating to insufficient service of process, time-barred claims, and immunity defenses. The Court found that plaintiffs had properly served defendants Liggett and Lopes, that plaintiffs' ADA and Section 504 claims were not barred by the statute of limitations, and the defendants were not

4

entitled to the defense of qualified or public official immunity. The order also granted the motion for excess pages and granted in part and denied in part the motion to strike.

The Court stayed its decision on defendants' remaining arguments in the motions to dismiss and held the case in abeyance until the SHRO issued a final decision. On May 16, 2022, SHRO issued a final decision, finding in favor of the plaintiffs. Plaintiffs filed a status report reporting this on June 22, 2022. The Court re-entered this case onto the active docket on July 6, 2022.

The following parts of defendants' motions to dismiss [DE 31, 42] remain outstanding: (1) the request to dismiss all claims for failure to state a claim; (2) the request to dismiss the state law claims for lack of supplemental jurisdiction; (3) the request to deny plaintiffs' request for punitive damages.

## DISCUSSION

Defendants argue that all claims against them should be dismissed because plaintiffs have failed to state claims upon which relief can be granted. As an initial matter, any arguments that plaintiffs were required to administratively exhaust their remedies before seeking relief for their federal claims are denied as moot, because plaintiffs have exhausted their administrative remedies. DE 56.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

5

alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The complaint must plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

**I. Counts One and Two: Federal Discrimination based on Disability Claims**

To state a claim of discrimination based on disability in violation of Section 504 of the Rehabilitation Act (Count One) or the Americans with Disabilities Act (Count Two), plaintiffs must allege that (1) "that [L.P.] has a disability; (2) that [s]he is otherwise qualified for the benefit or program in question, and (3) that [s]he was excluded from the benefit or program due to discrimination solely on the basis of the disability." *O.V. v. Durham Pub. Sch. Bd. of Educ.*, No. 1:17-CV-691, 2018 WL 2725467, at \*64 (M.D.N.C. June 6, 2018), *report and recommendation adopted*, No. 1:17-CV-691, 2018 WL 3370644 (M.D.N.C. July 10, 2018). "To prove discrimination in the education context, something more than mere failure to provide the free appropriate education required by IDEA[3] must be shown." *Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998) (internal bracketing and quotations omitted).

A Board of Education may be liable for constitutional violations perpetrated by educational staff members if the unconstitutional action "implements or executes a policy statement, ordinance,

---

[3] Individuals with Disabilities Education Act.

6

regulation, or decision officially adopted and promulgated by that body's officers. " *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

> "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 692. The superintendent, assistant superintendent, director, administrators, supervisors, and principals are all officers of the Board of Education and have "responsibility and authority to implement final municipal policy with respect to a particular course of action." *Lytle*, 326 F.3d at 472.[4]

When Section 504 and ADA discrimination claims are not based on the development or implementation of Individualized Education Plants ("IEPs"), "the correct inquiry is simply whether the School Board's actions have denied [L.P.] and other disabled students access to the program in question[.]" *Shirey ex rel. Kyger v. City of Alexandria Sch. Bd.*, 229 F.3d 1143, 2000 WL 1198054, at *5 (4th Cir. 2000).[5] In this case, the program plaintiffs allege that L.P. and other students in the

---

[4] *See also* N.C. Gen. Stat. § 115C-47(15) (requiring the Board to prescribe duties of the Superintendent); N.C. Gen. Stat. § 115C-47(18) (requiring the Board to "make rules concerning the conduct and duties of personnel" including superintendents, principals, and supervisors); N.C. Gen. Stat. § 115-276 (establishing the duties of superintendents including, but not limited to, implementing state policies and rules, carrying out all rules and regulations of the Board, firing and demoting staff, ensuring proper reporting to state authorities); N.C. Gen. Stat. § 115-278 (establishing the roles of assistant and associate superintendents); N.C. Gen. Stat. § 115C-286 (establishing rules for conduct of principals and supervisors); N.C. Gen. Stat. § 115C-287.1(a)(3) (creating the position of school administrator which includes principals, assistant principals, supervisors, and directors); N.C. Gen. Stat. § 115C-288 (establishing the duties of principals).

[5] Even if this case were about denial of a proper individualized education plan (IEP), plaintiffs would still have stated a claim. In order to prove discrimination in violation of Section 504 and the ADA based on an improper IEP, "a complaint must allege the school exercised bad faith or gross misjudgment." *Sellers by Sellers v. Sch. Bd. of City of*

7

Emotional Behavior Support ("EBS") program are denied access to is the general education program.

First, plaintiffs have alleged in their amended complaint that L.P. has disabilities. L.P. has other specified bipolar and related disorder, other specified attention-deficit/hyperactivity disorder, generalized anxiety disorder, sensory processing disorder of her auditory, vestibular, and tactile systems, moderate pragmatic/social language communication disorder, moderate articulation disorder, and nonverbal learning disability. Amended Complaint ¶ 1. Second, plaintiffs have alleged that L.P. is a handicapped, qualified student entitled to public education. *Id.* at ¶¶ 39, 169, 180.

Third, plaintiffs have plausibly alleged that defendants denied L.P. access to the educational classroom and her peers, and thus her education, by keeping her restrained and secluded due to her disability. *Id.* at ¶¶ 25, 172, 187. L.P. was allegedly restrained and secluded for "asking repeated questions, yelling, arguing, tipping back in their chairs, running, [and] flipping markers." Amended Complaint ¶ 188. Plaintiffs plausibly allege that other non-disabled students who exhibited the same behavior were not subjected to restraint and seclusion. Further, defendants knew that some of L.P.'s behavior was caused by her disabilities. For example, L.P.'s mother had told school staff that L.P. asks a lot of questions in order to manage her anxiety. *Id.* at ¶ 101. And yet, the school disciplined L.P. for just that behavior. Defendants have put forward no rational reason why L.P. needed to be restrained or secluded. L.P. was not alleged to be seriously violent

---

*Mannassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998) (quotations omitted*); Karen M. v. Bd. of Educ. for Cherokee Cty.*, No. 1:15-cv-48, 2015 WL 10490551, at *5 (W.D.N.C. Sept. 29, 2015). Plaintiffs in this case meet this burden by alleging that defendants continued to restrain and seclude L.P. after L.P. hurt herself, threatened suicide, the parents begged the school to stop, and L.P.'s doctor informed the school about how detrimental the harsh and unnecessary treatment was to L.P.'s health. Defendants allege that they were using these tactics on L.P. as part of the disability program at the school. However, given the information they had about L.P.'s reactions to these harsh tactics, it is sufficiently alleged that defendants acted with gross misjudgment.

or dangerous. Defendants do allege that there was one episode that is allegedly contradicted by video evidence, where defendant Leach alleges that L.P. hit a teacher, kicked a student, and bit staff. Especially since it is apparently contradicted by substantial evidence, this does not rise to the level of dangerousness contemplated under North Carolina General Statute § 115C-391.1. Accordingly, the Court finds that plaintiffs have plausibly alleged that the restraint and seclusion were solely based on disability discrimination.

Plaintiffs have alleged that the Board's final policymakers carried out a custom of allowing its subordinates to illegally restrain and seclude students like L.P. Plaintiffs allege that it was part of EBS policy to restrain and seclude disabled children as a form of punishment. Accordingly, plaintiffs have plausibly alleged that defendants discriminated against L.P. in violation of Section 504 and the ADA (Counts One and Two), and that the Board may be liable for such treatment.

## II. Counts Three through Seven: Federal 41 U.S.C. § 1983 Claims

To state a claim under 41 U.S.C. § 1983, plaintiffs must prove that L.P. "was deprived of a constitutional right by a defendant[s] acting under color of state law." *Cook v. James*, 100 F. App'x 178, 180 (4th Cir. 2004); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). "Local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 690–91. Liability may be attributed to a municipal board when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.

Plaintiffs have alleged that at all relevant times, all defendants were acting under the color of state law and were under the obligation of North Carolina state law to "ensure an open and safe

9

environment for educational services, free from abuse and disability-based discrimination." Amended complaint ¶ 213. Plaintiffs have plausibly alleged that the Board is a proper target of the § 1983 claims because the system the Board oversaw at Scotts Ridge, namely the Elementary Behavior Support program that L.P. and other disabled children were place in, was responsible for alleged pervasive and repeated constitutional violations. As stated above, the Board may be liable for the customary practices of its officers. *See Monell*, 436 U.S. at 692. Accordingly, plaintiffs have alleged sufficient facts such that all defendants, including the Board, are in the category of persons who may be targets of plaintiffs' § 1983 claims.

*Count Three: Equal Protection Claim*

Plaintiffs have plausibly alleged that defendant Board violated the equal protection clause of the Fourteenth Amendment (Count Three) by alleging that L.P. was treated differently than other students based on her disability. The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. "The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal quotations omitted). To state an Equal Protection claim, plaintiffs must "demonstrate that [L.P.] has been treated differently from others with whom [s]he is similarly situated and that the was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

In the context of education, "where the state has undertaken to provide [education], [it] is a right which must be available to all on equal terms." *Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483, 493 (1954). North Carolina provides a right to public education to all persons under twenty-one. N.C. Gen. Stat. § 115C-1; *see Leandro v. State*, 346 N.C. 336, 345 (1997). North Carolina

10

prohibits the use of restraint and seclusion "solely as a disciplinary punishment" for all students. N.C. Gen. Stat. § 115C-391.1(c)(3), (e)(3).

Plaintiffs plausibly allege that defendants denied L.P. equal protection of the law by failing to provide her equal access to her public education and equal protection from unlawful restraint and seclusion. Plaintiffs have sufficiently alleged that defendants prevented L.P. from accessing her educational classroom by keeping her restrained and secluded, forcing her to miss many hours of instructional time. Plaintiffs allege that the school did not keep full records of the number of times and duration of L.P.'s seclusion, but the records that it did keep allegedly show that L.P. missed 2.75 hours of instructional time in 2018 and about 13 hours of instructional time in 2019. This is not inclusive of the times when L.P. had to be picked up from school early, or was too afraid to attend school because of the alleged trauma she experienced from being restrained and secluded.

Plaintiffs have sufficiently alleged that defendants restrained and secluded L.P. as punishment and not as any part of a reasoned educational plan or because she was legitimately dangerous. A difference in treatment may be permissible if it "bears some fair relationship to a legitimate public purpose." *Plyler*, 457 U.S. at 216 (1982). Defendants have put forward no legitimate public purpose to punish a disabled child for asking repeated questions; telling the teacher that she or he was being annoying or mean; tipping back in her chair; flipping markers; pushing papers on a desk; getting out of her seat; attempting to leave the classroom; arguing with a peer; playing with the teacher's cards; and being out of her seat without permission. DE 32 at 17, 20. As previously stated, defendants have put forward no rational reason why L.P. needed to be restrained or secluded. L.P. was not alleged to be seriously violent or dangerous. Defendants do allege that there was one episode that is allegedly contradicted by video evidence, where defendant

11

Leach alleges that L.P. hit a teacher, kicked a student, and bit staff. Especially since this story is apparently contradicted by substantial evidence, this does not rise to the level of dangerousness contemplated under North Carolina General Statute § 115C-391.1. The Court finds that plaintiffs have alleged behavior by defendants that bears no fair relationship to a legitimate public purpose. Accordingly, the Court finds that plaintiffs have stated a plausible Equal Protection claim (Count Three).

### Count Four: Substantive and Procedural Due Process Claim

Plaintiffs have plausibly alleged that defendant Board, Moore, Hamilton, Lopes, Liggett, Leach, Harrison, and Straight violated her Fourteenth Amendment substantive and procedural due process rights (Count Four). A government actor's conduct may rise to the level of a substantive due process violation if the conduct is arbitrary or conscience shocking. *Collins v. City of Harker Heights*, 503 U.S. 115, 116 (1992). "[D]eliberate indifference [may be] egregious enough to state a substantive due process" claim. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998).

North Carolina children in public schools have the right to bodily integrity. *Tawney v. Hall*, 621 F.3d 607, 615 (1980) (finding that punishments arbitrarily administered "for no legitimate disciplinary purpose, makes it more, not less, likely that they constitute a malicious abuse of power violative of the Due Process Clause.") (quoting *Meeker v. Edmundson*, 415 F.3d 317, 324 (4th Cir. 2005)). "[W]here school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, we hold that Fourteenth Amendment liberty interests are implicated." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

Plaintiffs have plausibly alleged that defendants punished L.P. by physically restraining her and secluding her, causing her physical and emotional pain. Defendants allegedly continued to

12

restrain and seclude L.P. after L.P. hurt herself, threatened suicide, her parents begged the school to stop, and L.P.'s doctor informed the school about the detrimental impacts the harsh treatment was having on L.P.'s health. This alleged treatment of a child shocks the conscience. Defendants' excuse that this treatment was done in accordance with L.P.'s educational programing makes it no less shocking, and perhaps even more arbitrary.

North Carolina children attending public school have a right to their education. *Braittan v. Stanly Cnty. Bd. of Educ.*, 2020 WL 6364718 (Oct. 29, 2020) ("When a state provides a free public education, as North Carolina does, courts have found this creates a property interest that is protected by the Due Process Clause."); *see generally Goss v. Lopez*, 419 U.S. 565, 573 (1975) (finding that public school students have a property interest in their free public education when a state has chosen to provide a public education system). Plaintiffs have sufficiently alleged that L.P. was denied a significant number of instructional hours and suffered a substantive Due Process violation because of defendants' allegedly unlawful restraint and seclusion.

The Due Process clause provides students with "the basic right to a hearing of some kind" before they are denied their education. *Goss*, 419 U.S. at 574 (internal quotations omitted). "[A] student's legitimate entitlement to a public education as a property interest[,] which is protected by the Due Process clause[,] and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id.* "The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard." *Goldberg, v. Kelly*, 397 U.S. 254, 269-70 (1970). In keeping with the notice requirements of the Due Process clause, North Carolina law requires schools to notify parents of their child's restraint or seclusion. N.C. Gen. Stat. § 115C-391.1(j)(4); *see also* N.C. Gen. Stat. § 115C-391.1(c), (e).

13

Accordingly, plaintiffs had a Due Process right, at the very least, to be notified about their daughter's exclusion from educational time, and likely a right to a hearing regarding her right to bodily integrity and access to her education. *Goss*, 419 U.S. at 574. Plaintiffs have plausibly alleged that defendants violated that right by actively hiding L.P.'s restraint and seclusion from her parents. Defendants allegedly did not inform L.P.'s parents that restraint and seclusion were used in the EBS Program; provide written notice required under North Carolina General Statute Section 391.1; or conduct a prompt and equitable investigation of the allegations of improper seclusion and restraint when they were reported by L.P.'s parents in 2019. Defendants appear to imply that L.P.'s parents were informed about the use of restraint and seclusion at an IEP meeting. However, at this stage, the Court takes the facts in the light most favorable to the plaintiffs and finds that plaintiffs plausibly allege that they were not notified that restraint and seclusion was used as a punishment in their daughter's educational program. Accordingly, plaintiffs have stated a plausible procedural Due Process claim.

Defendants argue that plaintiffs have not adequately alleged personal liability against Superintendent Moore, Assistant Superintendent Hamilton, Director Lopes, and Senior Administrator Liggett. "[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). "Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* (emphasis in original) (internal citation omitted).

When a constitutional harm continues over a period of time, a supervisor's knowledge of the deprivation may make the supervisor personally liable. *Wright v. Collins*, 766 F.2d 841, 850

14

(4th Cir. 1985) ("Such notice can only facilitate personal involvement in a deprivation of rights where the harm continues over a period of time."); *see also Williamson v. Stirling*, 912 F.3d 154, 172 (finding individual liability for senior officials who authorized a prisoner remaining in the program in which he continued in solitary confinement "and the related events underlying his § 1983 due process claims").

> [T]o establish supervisory liability under § 1983, [plaintiffs must show]: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotations omitted).

First, plaintiffs have alleged that Moore, Hamilton, Lopes, and Liggett had actual or constructive knowledge that their subordinates—namely Straight, Harrison, and Leach—were engaging in conduct against L.P. that presented an unreasonable risk of constitutional injury. On February 22, 2019, defendant Moore was made aware of the unlawful restraint in the cafeteria when L.P.'s father emailed Moore about the incident. Hamilton, Lopes, and Liggett were allegedly made aware of the alleged constitutional deprivation when they were sent an email from Representative Batch's office stating concern about plaintiffs' allegations.

Second, Moore allegedly never responded to the email or did anything to prevent further restraint and seclusion. Plaintiffs allege that after Hamilton, Lopes, and Liggett received the email, no investigation was conducted and no ameliorative steps were taken. Moore did direct Lopes and Liggett to "dig deeper." Amended Complaint ¶ 152. However, plaintiffs allege that Lopes and Liggett did not investigate further and did nothing to learn about the issue or stop it. On its face,

15

this appears to be deliberate indifference on the part of Hamilton and Lopes and potentially tacit authorization on the part of Moore, Lopes, and Liggett.

Third, defendants' alleged inactions allowed L.P.'s constitutional injuries to continue. Each defendant was placed in a position of trust as administrators and supervisors of minor children in public schools. Each defendant allegedly failed to report or stop the unlawful conduct. Thus, plaintiffs have stated a claim against Moore, Hamilton, Lopes, and Liggett.

Accordingly, plaintiffs have stated a claim for a substantive and procedural Due Process violation (Count Four).

*Count Five: Fourth Amendment Unreasonable Restraint and Excessive Force Claim*

Plaintiffs have plausibly alleged a Fourth Amendment claim against the Board, Moore, Hamilton, Lopes, Liggett, Leach, Harrison, and Straight. Students have the "right to be free from the use of excessive force" in the "non-prisoner context" of a school. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251 (2d Cir. 2001). "Whether a school official has used excessive force is examined under a reasonableness standard 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *P.A. v. Fayette Cnty. Bd. of Educ.*, No. 2:19-CV-00705, 2020 WL 4740481, at *4 (S.D.W. Va. Aug. 14, 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

The court in *P.A. v. Fayette Cnty. Bd. of Educ.* denied a motion to dismiss when the plaintiffs stated that a teacher had slammed a developmentally disabled child into a chair and restrained him, resulting in bruising, fear of therapists, and developmental regression. *Id.* In this case, plaintiffs have alleged factually similar allegations: that teachers repeatedly physically restrained a disabled child, L.P., such that she became afraid to attend school, hurt her toes and pulled out her hair, and cause her psychological conditions to worsen. Given L.P.'s age and

16

disabilities, repeatedly restraining and secluding her as punishment was, on its face, not reasonable conduct on behalf of the defendants. Plaintiffs plausibly allege that defendants knew that L.P. suffered from anxiety and knew that she had injured herself as a result of this treatment. Any reasonable elementary school educator would know that restraining and secluding a child for such trivial behavior, as is cited in the amended complaint, is not reasonable.

Again, defendants argue that plaintiffs failed to state a claim against Moore, Hamilton, Lopes, and Liggett. But, as stated above, these individuals' alleged inaction may make them liable for the violations. Accordingly, plaintiffs have stated a Fourth Amendment claim (Count Five).

*Count Six[6]: Failure to Supervise and Train Fourteenth Amendment Claim*

Plaintiffs have plausibly stated a claim that the Board, Moore, Hamilton, Lopes, Liggett, Leach, and Harrison failed to train and supervise staff in violation of the Fourteenth Amendment. Supervisory liability may be established for constitutional violations of subordinates when the violations result from failure to train.[7] *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987*); W.E.T. v. Mitchell*, No. 1:06-CV-487, 2007 WL 2712924, at *11 (M.D.N.C. Sept. 14, 2007). "A claim of deliberate indifference ... implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." *Young v. City of Mount Ranier*, 238 F.3d 567, 576 (4th Cir. 2001) (quoting *White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997)). The Court finds the first prong satisfied because, as discussed previously, plaintiffs have plausibly alleged that defendants were on notice that their subordinates

---

[6] Listed in the Amended Complaint as Count V, when it is in fact the sixth count.

[7] "[T]o establish supervisory liability under § 1983, [plaintiffs must show]: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)

17

were repeatedly violating L.P.'s constitutional rights. Second; Moore, Hamilton, Lopes, Liggett, Leach, and Harrison each had a responsibility to oversee and supervise programs and staff at Scotts Ridge who were allegedly perpetuating systematic constitutional violations. Third, had defendants met their professional responsibilities, they likely would have trained their staff not to violate the rights of the children in their care, and would have supervised the staff to a degree that could have prevented the alleged violations. Accordingly, plaintiffs have stated a plausible failure to train and supervise claim.

*Count Seven[8]: Conspiracy to Commit Deprivation of Civil Rights Claim*

Plaintiffs have plausibly stated a claim for civil conspiracy against the Board, Moore, Hamilton, Lopes, Liggett, Leach, Harrison, and Straight. To state a § 1983 conspiracy claim, plaintiffs must show that "defendants conspired or acted jointly or in concert and that some overt act was done in furtherance of the conspiracy, which resulted in plaintiff being deprived of the constitutional right." *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992). Plaintiffs are "not required to provide direct evidence of the agreement between conspirators. Circumstantial evidence may provide adequate proof of the existence of such a conspiracy." *Id.* at 576-77. If "two or more of the Defendants witnessed the [the seclusion and restraint] inflicted upon the Plaintiff by any of the other Defendants either individually or jointly and did nothing to prevent it, then ... the Defendants participated in a civil conspiracy to deprive Plaintiff of [her] constitutional rights." *Id.* at 577. A "meeting of the minds" can be inferred by circumstantial evidence such as when a public official "ignore[s] his [or her] obligation as an officer to prevent such [illegal] misconduct." *Id.* "Acquiescence can amount to a conspiracy agreement when, as here, one [public official] watches an open breach of the law and does nothing to seek its prevention." *Id.* at 578.

---

[8] Listed as Count VI, when it is in fact the seventh count.

18

Plaintiffs allege that Straight, Harrison, and Leach directly participated in the unlawful seclusion and restraint, or had firsthand knowledge of the illegal conduct and did nothing. On February 22, 2019, defendant Moore was made aware of the unlawful restraint in the cafeteria and allegedly did nothing to prevent further restraint and seclusion. Moore allegedly never bothered to respond. Plaintiffs have plausibly alleged that Moore, who as the superintendent of the school who did nothing about known constitutional violations being perpetrated, participated in a civil conspiracy. Hamilton, Lopes, and Liggett were made aware of the alleged constitutional violations when they were sent an email from Representative Batch's office stating concern for the allegations. Plaintiffs allege that staff at Scotts Ridge continued to use restraint and seclusion on disabled students after the email was sent. Further, Lopes had a meeting with L.P.'s parents on December 3, 2019, where the parents detailed their concerns. Superintendent Moore works with defendant Board, and plaintiffs allege that the Board knew about plaintiffs' complaints of unlawful treatment and refused to provide L.P.'s parents with seclusion and restraint data it had collected for state reporting purposes.

Plaintiffs have alleged that Straight, Harrison, and Leach participated in the conspiracy directly by perpetrating the deprivations and working to hide it from L.P.'s parents. Plaintiffs have alleged that defendants Board, Moore, Lopes, and Liggett were made aware of "an open breach of the law and [did] nothing to seek its prevention." *Hafner*, 983 F.2d at 578. The meeting of the minds between the defendants directly involved and the defendants who did nothing to stop it has been demonstrated by sufficient circumstantial evidence. Accordingly, plaintiffs have stated a claim.

**III. Counts Eight through Ten: State Law Claims**

19

Defendants argue that the court should decline to exert supplemental jurisdiction over the state law claims. "The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995); *see* 28 U.S.C. § 1367 (1993). In this case, the state law claims and the federal claims, which the Court has not dismissed, rely on the same nucleus of facts. Accordingly, defendants' 12(b)(1) arguments in their motions to dismiss are denied.

*Count Eight: Negligence*

Plaintiffs have plausibly alleged a claim of negligence against the Board, Moore, Hamilton, Lopes, Liggett, Leach, Harrison, and Straight. To state a negligence claim, plaintiffs must allege "(1) a legal duty, (2) a breach thereof, and (3) proximate cause of [plaintiff's] injury." *Foster v. Nash-Rocky Mount Cnty. Bd. of Educ.*, 191 N.C. App. 323, 326 (2008) (internal quotations and citation omitted). "North Carolina case law has stated that a teacher has a duty to abide by that standard of care which a person of ordinary prudence, charged with his duties, would exercise under the same circumstances." *Id.* In the context of a teacher's duty to a disabled child, the court takes into consideration that "the amount of care due a student increases with the student's immaturity, inexperience, and relevant physical limitations." *Id.* at 327; *see Payne v. N. Carolina Dep't of Hum. Res.*, 95 N.C. App. 309, 314 (1989). "Plaintiff's characteristics are relevant, along with the other conditions present in the situation, in determining whether [the teacher] exercised ordinary prudence in that situation." *Id.*

Defendants seem only to challenge the assertion that defendants had a duty to L.P. However, the Court finds that plaintiffs have plausibly alleged that defendants had a duty to report the restraint and seclusion to L.P.'s parents for two reasons. First, given L.P.'s anxiety and special

20

needs, any reasonable teacher in a similar circumstance would inform the child's parents of traumatic discipline during the child's school day. Defendants allegedly intentionally concealed the extent to which L.P. was being physically restrained and secluded. Defendants misled L.P.'s parents when defendants characterized it as a "time out." Amended Complaint ¶ 105. Any reasonable teacher would have told a child's parents that the child was physically dragged from the school cafeteria, as allegedly happened to L.P. on February 21, 2019.

Second, defendants are mandatory reporters under North Carolina General Section 115C-391.1, as well as Board policy 4340. Plaintiffs plausibly allege that defendants breached this duty to report by failing to inform L.P.'s parents of the extent of the restraint and seclusion. Finally, plaintiffs have plausibly alleged that the breach of this duty was a proximate cause of L.P.'s injuries, as it allowed the injurious conduct to continue happening.

*Count Nine: Negligent Infliction of Emotional Distress*

Plaintiffs have plausibly alleged a claim of negligent infliction of emotional distress ("NIED") against Moore, Hamilton, Lopes, Liggett, Leach, Harrison, and Straight. To state a negligent infliction of emotional distress claim, plaintiffs must allege that: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Riddle v. Buncombe Cnty. Bd. of Educ.*, 256 N.C. App. 72, 74 (2017). "[S]evere emotional distress means an emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.* at 74-75 (internal quotations omitted). In North Carolina, the distress must be

21

severe and "mere temporary fright, disappointment or regret will not suffice." *Sorrells v. M.Y.B. Hosp. Ventures of Asheville*, 334 N.C. 669, 672 (1993).

Defendants do not appear to dispute that it was reasonably foreseeable that defendants' conduct would, and did, cause L.P. severe emotional distress. Defendants only argue that plaintiffs have alleged intentional, rather than negligent, infliction of emotional distress. Since the Court has already found that plaintiffs have stated a claim for negligence, the Court finds that the first element of NEID is met.[9] Since defendants appear to concede the other elements, plaintiffs have stated a claim.

### *Count Ten: False Imprisonment*

Plaintiffs have plausibly stated a false imprisonment claim against Leach, Harrison, and Straight. In order to state a false imprisonment claim, plaintiffs must allege "(1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force, and (3) against the plaintiff's will." *Wilkerson v. Duke Univ.*, 229 N.C. App. 670, 674 (2013) (citation omitted). "The restraint requirement of this action requires no appreciable period of time, simply sufficient time for one to recognize his illegal restraint. The tort is complete with even a brief restraint of the plaintiff's freedom." *Id.* (citation omitted). "Illegal or unlawful necessarily implies deliberateness in defendants' actions." *Emory v. Pendergraph*, 154 N.C. App. 181, 185 (2002) (internal quotations omitted).

Defendants do not appear to dispute that L.P. was restrained and placed in the closet by force, or implied threat of force, against her will. Defendants argue instead that the restraint was

---

[9] Further, in North Carolina, "[c]ourts routinely allow allegations of intentional and negligent infliction of emotional distress to be alleged in the alternative, and on the same set of facts." *Sauers v. Winston Salem/Forsyth County Board of Education*, 179 F.Supp.3d 544, 554 (M.D.N.C. 2016) (allowing a student with disabilities who was bullied by his teachers to move forward with claims of both intentional infliction of emotional distress ("IIED") and NIED).

not intentional or deliberate action by defendants, and thus could not be illegal. The plaintiffs have clearly stated that some defendants personally physically restrained L.P. and put her in a closet for extended periods of time against her will. Certainly, the defendants don't mean to imply that the teachers accidentally put L.P. in a closet. Defendants could not have perpetrated these alleged actions by accident, so their argument fails. Accordingly, plaintiffs have stated a claim.

Defendants' motions to dismiss all claims against them based on plaintiffs' failure to state any claim are denied. At this point in the litigation, plaintiffs have plausibly alleged all elements necessary for all claims.

**IV. Punitive Damages**

Plaintiffs request punitive damages in excess of $25,000.00 in their first amended complaint. Defendants allege that punitive damages are improper against a North Carolina school board in the absence of statutory provisions. Plaintiffs do not address punitive damages in their motion in opposition to defendants' motions to dismiss.

North Carolina case law supports the proposition that punitive damages are not available for a state law claim against a governmental entity. *See North Carolina Motorcoach Ass'n v. Guilford County Bd. of Educ.*, 315 F. Supp. 2d 784, 810 (M.D.N.C. 2004); *Ripellino v. N. Carolina Sch. Boards Ass'n, Inc.*, 158 N.C. App. 423, 431 (2003) ("in the absence of statutory provisions to the contrary … municipal corporations are immune from punitive damages."). Accordingly, defendants' motion to dismiss is granted in part, and plaintiffs are not permitted to seek punitive damages from the Board for state law claims. The remainder of defendants' arguments about punitive damages for federal claims are denied without prejudice at this time.

CONCLUSION

23

Accordingly, the motions to dismiss [DE 31, 42] are DENIED IN PART as to the 12(b)(6) and 12(b)(1) arguments. The motions are DENIED IN PART AS MOOT as to administrative exhaustion. The motions are DENIED IN PART WITHOUT PREJUDICE as to arguments to dismiss punitive damages against the Board for federal claims. The motions are GRANTED IN PART as to dismissal of punitive damages against the Board for state law claims.

SO ORDERED, this **15** day of July, 2022.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

Case 5:20-cv-00481-BO   Document 57   Filed 07/18/22   Page 24 of 24