IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CASE NO. 5:20-cv-00481-BO

| | |
|---|---|
| L.P., by and through her guardians, J.P. and K.P., and J.P. individually,<br><br>     Plaintiffs,<br><br>     v.<br><br>WAKE COUNTY BOARD OF EDUCATION; CATHY MOORE, Current Superintendent of Wake County Public Schools, in her individual capacity; KAREN HAMILTON, Assistant Superintendent of Special Education Services for Wake County Public Schools, in her individual capacity; CAM LOPES, Director for Social and Behavioral Programming in Wake County Public Schools, in her individual capacity; BARBARA LIGGETT, Senior Administrator for Special Education Services in Wake County Public Schools, in her individual capacity; MARY ELLEN LEACH, Scotts Ridge Elementary School Principal, in her individual capacity; SHARON HARRISON, Scotts Ridge Elementary School Assistant Principal, in her individual capacity; and JEFFREY STRAIGHT, Scotts Ridge Elementary School Teacher, in his individual capacity.<br><br>     Defendants. | **SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS** |

**SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS**

This SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS ("Agreement") is made and entered into this 22__ day of April, 2023, by and between Jocelyn Pease and Kevin

1

Pease, individually and on behalf of L.P., a minor, Liberty Mutual Company ("Insurer"), insurer of the Wake County Board of Education ("Board"), its agents and employees, the Wake County Board of Education, and the individually named Defendants ("Defendants," and collectively with Plaintiffs, the "Parties").

WHEREAS, on February 20, 2020, Jocelyn Pease, through counsel, filed a petition for a contested case hearing in the North Carolina Office of Administrative Hearings at Case No. 20-EDC-00832 in order to resolve a dispute about the provision of a free and appropriate education;

WHEREAS, this matter was heard before Administrative Law Judge Stacey Bawtinhimer over twelve days between August 26 and October 20, 2020;

WHEREAS, on July 30, 2021, Judge Bawtinhimer entered her final decision in favor of the Plaintiffs;

WHEREAS, on September 11, 2020, Plaintiffs filed a Complaint in the United States District Court for the Eastern District of North Carolina, and on March 30, 2021, filed an Amended Complaint in the United States District Court for the Eastern District of North Carolina, seeking, *inter alia*, the recovery of attorneys' fees claimed for the contested case hearing and the recovery of reimbursements for educational expenses related to L.P., along with damages for alleged violations of federal and state laws;

WHEREAS, the federal case was stayed pending the result of an appeal of the underlying administrative hearing to the State Review Officer;

WHEREAS, on May 16, 2022, State Review Officer John Robinson entered his decision affirming the ALJ's administrative decision; and

WHEREAS, the Parties desire to avoid the costs and burdens of further litigation and have now reached resolution of the claims in the Amended Complaint and the administrative hearing based upon further negotiations between the parties.

NOW, THEREFORE, in consideration of the mutual promises and releases contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

## DEFINITIONS

a. "**Administrators**" refers, for purposes of identifying those who will be trained pursuant to the terms of this Agreement, to all District-level administrators that oversee the EBS program, behavior programs, the reporting of seclusion and restraint, principals, and assistant principals.

b. "**Behavior Intervention Plan**" or "**BIP**" refers to an intervention plan designed to change student behavior by developing strategies for staff to prevent, teach, and reinforce the targeted

2

behavior identified through the FBA. A BIP identifies proactive strategies to teach student new skills and replacement behaviors, identifies interventions based on the function to improve student behavior, creates a plan for teachers and staff to follow, and teaches new behaviors instead of suppressing behaviors through punishment.

c. **"CPI"** refers to the Crisis Prevention Institute, Inc. or any entity that replaces CPI in providing certification to district staff who provide training regarding the use of Physical Restraint.

d. **"EBS Manual"** refers to the district's Elementary Behavior Support Manual, which includes legally-compliant definitions of all terminology used in the program and a copy of the official form that will be provided to parents if their child is restrained or secluded. The manual must be available in English and Spanish.

e. **"Functional Behavior Assessment" or "FBA"** refers to a systematic process of collecting information and identifying specific behaviors, relationships, and patterns that lead to classification of behavior based upon function and context/antecedent, whose purpose is to provide data for problem solving in order to support students in reducing behaviors and help teams determine why problematic behaviors occur.

f. **"Instructional Staff"** refers to certified staff (e.g., teachers and counselors) and noncertified staff (e.g., teacher aides or paraprofessionals) who work directly with students.

g. **"Physical Restraint"** refers to a personal restriction, imposed by a school staff member or other individual, that immobilizes or reduces the ability of a student to move his or her torso, arms, legs, or head freely. N.C. Gen. Stat. § 115C-391.1(b)(8).

h. **"Seclusion"** refers to the involuntary "confinement of a student alone in an enclosed space from which the student is: (a) Physically prevented from leaving by locking hardware or other means; [or is] (b) Not capable of leaving due to physical or intellectual incapacity." N.C. Gen. Stat. § 115C-391.1(b)(10). The term "time out" should not be used interchangeably with, in lieu of, or to describe "seclusion."

i. **"Student with a Disability" or "Students with Disabilities"** refers to a student(s) who has or would qualify to receive accommodations, reasonable modifications of policy, or disability-related services or supports under the Individuals with Disabilities Education Act ("IDEA"), the Americans with Disabilities Act ("ADA"), or Section 504 of the Rehabilitation Act of 1973 ("Section 504").

## TERMS OF AGREEMENT

1. **Settlement/Disbursement.** In settlement of all outstanding disputes between the Parties, Defendants agree to pay, and Plaintiffs agree to accept a one-time disbursement of four hundred fifty thousand dollars ($450,000): Payment shall be by check made payable to the Trust Account of Gahagan Paradis PLLC within thirty (30) business days of filing the stipulation of dismissal described in Paragraph 12.

3

Exhibit A

a. One hundred ninety-five thousand ($195,000) for all attorneys' fees and costs incurred in the underlying administrative hearing and appeal to the State Hearing Review Officer;

b. One hundred fifteen thousand ($115,000) for all attorneys' fees and costs incurred in the litigation and defense of the two federal actions;

c. Ninety-seven thousand ($ 97,000) for reimbursement for all tuition reimbursement, transportation, compensatory services, and costs to provide the related services ordered by the Administrative Law Judge (ALJ) in the Final Decision; and

d. Forty-three thousand dollars ($ 43,000.00) for all damages sought or that could have been sought in the federal discrimination action.

2. <u>Upon L.P.'s re-enrollment in the WCPSS.</u> Defendants agree to obtain the services of, or contract with a mutually agreed upon Inclusion and Behavior Specialist to assist in the development of an IEP and BIP for L.P. and provide assistance to the IEP team and Parents for the 2023-24 school year and the 2024-2025 school year. The Inclusion and Behavior Specialist shall review L.P.'s educational record, meet with her parents and school staff, conduct a functional behavior assessment, if deemed necessary by the Independent Inclusion and Behavior Specialist, prior to developing the IEP and BIP. Defendants will provide for up to ten (10) hours of consultation with the Inclusion and Behavior Specialist each year to provide support and assistance to the teachers and staff working with L.P. or conduct additional training at the discretion of Defendants.

3. <u>Transparency and Accountability Measures.</u> As further consideration for the settlement described herein, the Board of Education agrees to take the following steps to address concerns raised in this litigation:

a. **EBS Manual.** The District will publish its EBS Manual on its website under "Special Education: Programs and Services." The EBS Manual will include visual examples and written explanations of the various CPI physical restraint techniques (e.g., Children's Control Position), or similar physical restraint techniques on which staff are trained, if not CPI. The EBS Manual will also include a link for parents to access the district's webpage where the semiannually reports with restraint and seclusion data are published.

b. **EBS Placement.** Decisions to place students in an Elementary Behavior Support ("EBS") classroom will be made at a formal IEP meeting or with the informed consent of the parents/guardians while a formal IEP meeting is being scheduled. Prior to the IEP meeting or a child being placed in the EBS classroom, parents will be provided a copy of the district's EBS manual of practices and procedure as well as receive a document explaining in detail seclusion and restraint and district practices related thereto. Parents will be given the option of receiving a paper copy of the EBS manual. Parents will receive a form to sign confirming their receipt of EBS and restraint/seclusion materials. Upon request, staff will provide parents with a tour of the relevant

4

EBS classroom, including any approved seclusion space. If a student enrolls during the school year and the EBS program represents comparable services pending a formal IEP meeting to determine placement, parents will also be provided a copy of the district's EBS manual of practices and procedure as well as receive a document explaining in detail seclusion and restraint and district practices related thereto.

c. **Explanation of Seclusion and Restraint.** At the start of each school year, parents of children receiving services through an EBS program will receive a document explaining in detail seclusion and restraint—as well as the distinct terms that are used in the program (e.g., "time out," "quiet room," "T.O.")—and district practices related thereto. The document will inform parents of their right to request photos of the seclusion room or the tour described in section b. Upon request, trained staff will provide parents with a demonstration of seclusion and restraint techniques, this may be demonstrated in a video to which a parent could be given access. Parents will receive a copy of the official form that will be used for reporting incidents of Seclusion and Restraint to them during the school year.

4. **Notification to Parents.** After every instance of restraint and/or seclusion, relevant staff will complete the reporting form described in subsection (5). The administrator responsible for oversight should review any reports and follow-up with reporting staff when reports are inconsistent or insufficient to determine the appropriateness of the action reported. To the extent videos exist, administrators will be trained and expected to save all videos of any restraint/seclusion incidents. Copies of all saved videos of any restraint/seclusion incidents will be provided to the Central Office. The Central Office will keep copies of all videos of restraint and seclusion for three (3) years.

a. Parents will be notified, verbally via phone call or electronically via text or email, as soon as reasonably practicable following a student's restraint or seclusion, but no later than the end of the school day. As soon as reasonably practicable after the form described in subsection (5) is completed, parents will be provided with the form, including the following information:

   i. List the antecedents to the behavior that led to the Physical Restraint of use of seclusion.

   ii. List a description of the behavior that led to the Physical Restraint or seclusion.

   iii. List all interventions or de-escalation techniques attempted, or other actions, taken prior to the use of Physical Restraint.

   iv. Identify the Physical Restraint technique used and the time it began and ended. Upon request, Parents shall be provided a document providing a visual example and written explanation of the technique (e.g., Children's Control Position).

   v. Specify the role each staff person played in the incident.

   vi. Attach any witness statements, subject to appropriate redaction of information that is not directly related to their own child, such as

5

confidential student information of another student or confidential personnel information.

vii. Notify parents of their right to request to view any existing videos of the restraint and/or seclusion.

b. Parents will be offered the opportunity to meet with the building administrator, with such meeting to occur within five (5) school days when practicable. Parents will also be offered the opportunity to request a formal IEP meeting to review the FBA and BIP to be held within ten (10) school days of the request.

5. **Reporting and Public Notification.** The Board will implement a system of standardized electronic reporting for incidents of seclusion and restraint. Administrative and instructional staff will be trained on this system, including that this electronic form must be completed for each instance of the use of seclusion or physical restraint. Part of this form will include information on when and how parents were notified of the incident. Designated central office administrators will be responsible for a review each month of the seclusion and restraint data collected. The district will publish semiannually reports with restraint and seclusion data on its website.

6. **Correction of the US Department of Education's Civil Rights Data Collection Reports.** The Board recognizes it previously reported zero (0) instances of the use of restraint or seclusion when reporting to the State Board of Education (SBE) and the US Department of Education. By June 1, 2023, the Board will review all reasonably available restraint and seclusion data since 2016 and send corrected data on the use of restraint and seclusion to the State Board of Education (SBE) and the US Department of Education on the use of restraint and seclusion for each reporting year from 2016 through the 2021-2022 school year.

7. **Training.** By July 1, 2023, the Board will begin providing updated training for administrators and instructional staff regarding the use of seclusion and restraint. This training will include district-wide annual legal training on the use of seclusion and restraint, including illustrative examples and hypotheticals, and specific training for relevant staff regarding the use of the electronic reporting form and system.

8. **Reports to Board and Special Education Advisory Council.** On a semi-annual basis, knowledgeable staff from central office will develop and present to the Board of Education, in a regularly scheduled open meeting, a report on the use of seclusion and restraint in the district. This report will be made available to the public. The Board will invite the Independent Consultant as described in Paragraph 9 to attend the Board meetings referenced in the previous sentence. In addition, a similar report will be presented to the Special Education Advisory Council for feedback from members of that group.

6

9. **Independent Consultant.** By August 31, 2023, the Board will retain the services of a mutually agreeable independent consultant through the 2025-26 school year to review the EBS program, its practices and procedures, visit EBS classes, provide training, and specifically to advise regarding the district's practices related to seclusion and restraint. The Independent Consultant will be contracted to provide these services no less than one day each month throughout the calendar year. By December 31, 2023, the Board and independent consultant will evaluate whether there is a need to revise the Board's current professional development training video on restraint and seclusion to include video examples of restraint and a series of hypotheticals when restraint or seclusion may be necessary under the statute. The Board will work with the consultant to revise district procedures and forms relating to the use of restraint and seclusion as well as the development of FBAs and BIPs consistent with current research-based standards. The Board will further work with the independent consultant to determine and develop additional staff training as needed regarding various behavioral intervention models in an effort to reduce incidents of seclusion and restraint.

10. **No Retaliation.** Defendant Board agrees it, and its employees, shall not discriminate or retaliate in any manner against the Plaintiffs as a result of the filing this federal action (5:20-cv-00481-BO), filing the underlying administrative complaint (20-EDC-00832), for giving testimony at the underlying administrative hearing, or for previous contact with the press.

11. **Release of Claims.** Plaintiffs, for themselves and their representatives, heirs, successors and assigns, and the Wake County Board of Education, its employees, agents, current or former board members, officials, representatives, independent contractors, successors and assigns, as well as all individually named defendants and Defendants' insurers (collectively "Released Parties") do hereby forever mutually discharge and release each other from any and all liability, claims, demands, rights, actions or causes of action of any kind or character whatsoever, including attorneys' fees and costs, whether at law or equity, known or unknown, alleged in (or which could have been alleged in) this action, including but not limited to any and all claims that were made or could have been made in the underlying administrative action at OAH Docket No. 20-EDC-00832 or the federal actions at 5:20-cv-00481-BO and 5:22-cv-312-BO-BM, as well as any relief ordered as a result of the administrative action or federal litigation, at any time up to the execution of this Agreement, except as to obligations arising out of the terms of this Agreement (the "Released Claims"). It is specifically acknowledged that the terms of this agreement replace any obligation to comply with any relief ordered in the underlying administrative decisions.

12. **No Admission of Fault or Liability.** It is agreed and understood by the Parties that the execution of this Agreement shall not constitute an admission of fault or

7

liability on the part of the Board, its members, officers, administrators, employees or agents, Liberty Mutual Company ("Insurer"), its agents and employees, or an admission of any specific fact related to the issues raised at the resolution.

13. **Dismissal with Prejudice.** Upon execution of this Agreement, Plaintiffs and Defendants agree to the execution and filing of a Voluntary Dismissal With Prejudice with the Court within three (3) business days of final approval by the Court. Because a portion of the settlement represents damages to L.P., a minor, the parties agree that a minor settlement approval hearing will be required and that the parties will bear their own costs related to that proceeding.

14. **Notice and Opportunity to Cure.** The parties acknowledge that the Transparency and Accountability Measures in Paragraph 3 and its subparts are being implemented district-wide across hundreds of schools and for a student population of over 160,000 students. The parties recognize that these efforts will take time and that isolated incidents of noncompliance may occur. Plaintiffs agree that isolated, unintentional failures to implement these systemic reforms will not constitute a material breach of this Agreement. In addition, notice of any alleged failures to perform the commitments in Paragraphs 2-8 must be provided in writing to the attention of Jill McKenna, Assistant Superintendent of Special Education Services, or her designee, and the Board given a reasonable time, but not more than thirty (30) days, to cure the alleged failure before any claim for breach may be made. A summary of any such reported breaches, with no identifying student or staff information, will be included in the report to the Board of Education and the Special Education Advisory Committee described in Paragraph 8 and determine what additional training or supports, if any, are needed by the noncompliant staff. The parties further acknowledge that, while the systemic reforms contemplated in this Agreement will be put into effect as described and maintained in good faith, all obligations in Paragraphs 2-8 of this agreement will sunset and no longer be subject to breach claims for any reason after three (3) years from execution of this Agreement.

15. **General Terms.**

a. This Agreement is binding upon Jocelyn Pease and Kevin Pease for themselves and on behalf of L.P., their successors, heirs, guardians and assigns and upon the Defendants, their members, officers, administrators, and employees and their successors and assigns.

b. This Agreement shall be governed by and interpreted in accordance with the laws of the State of North Carolina.

c. This Agreement is entered into voluntarily by the parties and with full knowledge of any potential constitutional, statutory, or other rights each may have.

8

d.     This Agreement constitutes the entire agreement between the Parties. It supersedes any prior understanding or agreement between them respecting the subject matter. There are no representations, arrangements, understandings, or agreements, oral or written, relating to the subject matter of this Agreement, except those fully expressed herein and in the stipulation of dismissal. No changes, amendments, alterations, modifications, additions, or qualifications to the terms of this Agreement shall be made or be binding unless made in writing and signed by both of the parties.

e.     This Agreement may be signed by each Party's respective duly authorized representative in one or more counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute one single agreement between the Parties hereto. Once signed, any reproduction of this Agreement made by reliable means (for example photocopy or facsimile) is considered an original.

f.     The Parties agree that any responses to inquiries or any other comments about the case by either party shall be limited to the findings of the Administrative Law Judge at the Office of Administrative Hearings, the findings of the State Hearing Review Office, and the non-monetary terms the District will be implementing as a result of Settlement. This provision is not meant to limit the freedom of speech of Plaintiffs but is meant to only limit disclosure of the monetary terms of the settlement agreement. The parties and their attorneys further agree to use their best efforts to assure that their clients, heirs, assigns, predecessors and successors in interest, insurers, agents, representatives, and those in privity therewith, do not disparage one another in connection with matters arising out of this Agreement.

g.     Plaintiffs acknowledge that they are solely responsible for considering and complying with any tax consequences to them of this Agreement.

*Page left intentionally blank*

9

WHEREFORE, the parties have entered into this Agreement as of the day and year first above written.

**FOR PLAINTIFFS:**

_Jocelyn Pease_, individually and on behalf of L.P.

_Kevin Pease_, individually and on behalf of L.P.

Stacey Gahagan
Attorney for Plaintiffs

**FOR RESPONDENT:**

Wake County Board of Education

Chair, Wake County Board of Education

Liberty Mutual Insurance Company

By: _Lesley Woods_ _____ (SEAL)
Authorized Representative

_____

Stephen G. Rawson
Attorneys for Respondent

10

WHEREFORE, the parties have entered into this Agreement as of the day and year first above written.

**FOR PLAINTIFFS:**

Jocelyn Pease, individually and on behalf of L.P.

Kevin Pease, individually and on behalf of L.P.

Stacey Gahagan
Attorney for Plaintiffs

**FOR RESPONDENT:**

**Wake County Board of Education**

Chair, Wake County Board of Education

Liberty Mutual Insurance Company

By: _____ (SEAL)
    Authorized Representative

Stephen G. Rawson
Attorneys for Respondent

10